STATE OF MAINE

ANDRSCOGGIN, ss

UNIFIED CRIMINAL COURT
LOCATION: PORTLAND
DOCKET NO. CR-19-2470

STATE OF MAINE )
)
)
)
)
vs. )       ORDER ON MOTION
)            TO SUPPRESS
)
)
JOHN HOWARD, JR. )
        Defendant )

Pending before the court is the Defendant John Howard's Motion to Suppress Statements, filed January 31, 2020. Howard contends that he was subjected to a custodial interrogation by a law enforcement officer without the benefit of *Miranda* warnings. Hearing on the motion was held February 4, 2020. At hearing testimony was received from Detective Stackpole of Westbrook police. Also admitted into evidence was State's Exhibit 3, a recording of Det. Stackpole's interview of Howard on August 15, 2018, and State's Exhibit 1, the docket record of CUMCD-CR-2011-07426 which was a conviction for domestic violence assault. However, pursuant to an agreed upon Motion to Retract State's Exhibit 1 From Evidence filed February 6, 2020, Exhibit 1 was retracted and not considered by the court. For the reasons set forth herein, the court denies the motion that the interview was custodial.



1

## BACKGROUND AND FACTS

By a superseding indictment dated December 5, 2019, Howard is charged with Burglary, Class B, Theft, Class C, and Theft Class E. It is alleged that on August 2, 2018 Howard entered the home of Jeffery and Lisa Kelley, and stole from there property including a TV, computer, jewelry and other items. Soon into the investigation by Westbrook police Howard became a suspect.[1]

On or about August 15, 2018, Det. Stackpole went to Howard's mother's home for the purpose of interviewing him. Three other officers from Westbrook police accompanied Det. Stackpole. One of the other officers was a detective, one was a patrol officer restricted to light duty who was working with detectives to gain experience, and the third was a school resource officer who also acted as a detective in the summers. Det. Stackpole indicated these other officers accompanied him for experience and because it was a nice summer day for a drive. All of the officers were in plain clothes, but with police badges exposed, and were armed with their duty-issued firearms. They traveled together in an unmarked vehicle.

---

[1] Supposedly, Howard was acquainted with the Kelley's daughter who allegedly told him and others her family was abusive. This prompted Howard and others to go to the Kelley's home to confront them with these claims. When no one responded to their knock on the door, Howard and his associates went to Westbrook police to report the allegations. Apparently they were unsatisfied with police's response. Apparently Howard returned to the Kelley's. It was ultimately reported that a pick-up matching the description of Howard's pick-up was seen at the Kelley residence at the time the crimes were believed to have occurred. That with additional evidence gathered by Westbrook police lead them to identify Howard as a suspect.

When the officers arrived at Howard's mother's home Det. Stackpole saw a number of people standing in the garage, including Howard, a women ultimately identifed as his mother, another man identifed as Howard's grandfather, and some other unidentifed individuals. The garage is a single bay with one garage door that was fully open when the officers arrived. Howard and the others were all standing in the garage, socializing and playing darts. Howard was consuming a beer.

As Det. Stackpole approached the garage, he asked for John Howard, and Howard came forward, holding his beer. Det. Stackpole introduced himself and told Howard he was there to talk about the burglary at the Kelley home. Det. Stackpole engaged Howard at the front, right side of the garage, near the open garage door. They ended up standing about three feet from one another while they spoke. Howard's mother and grandfather remained in the garage about ten feet away. The other Westbrook officers all remained outside of the garage, also about ten feet away.

When Det. Stackpole identified Howard and recognized he was going to engage him in conversation, he retrieved from his briefcase his digital recorder and turned it on to record the interview. Approximately 30 seconds elapsed from when Det. Stackpole first engaged Howard in conversation until the recorder was turned on. Prior to the recorder being activated, Det. Stackpole's dialogue with Howard was about his going to the Kelley's home to confront them about the assault allegations their daughter had made, and then going to theWestbrook police station. The first words heard on the recording of the interview are "...and after that...", which was a reference to going to the police

station and later returning to the Kelley's residence. Howard saw the recording device and asked the detective if they were being recorded, and the detective responded affirmatively.

Det. Stackpole initial questions were directed to Howard's return to the Kelley residence. Howard stated he returned only to retreive his pick-up, but that later in the day he received multiple phone-calls from friends asking if he had broken into the Kelley's home. Det. Stackpole jumped in and stated "And you did..", to which Howard responded "no". Det. Stackpole then initiated the interviewing technique "..there is an easy way and a hard way".

Det. Stackpole told Howard there was an easy way or a hard way- the easy way being easy for him, easy for the victim, and easy for Howard, which was for him to tell Det. Stackpole what happened; and the hard way, which was for the detective to "..get an arrest warrant..or whatever he needed to do..". Det. Stackpole then proceeded to tell Howard he had incriminating evidence, including DNA, and that he knew Howard went into the house. Howard then stated "..let's make it easy.." and proceeded to make incriminating statements admitting to the crimes. Det. Stackpole did not advise Howard of his *Miranda* rights, nor did he tell Howard he was free to leave and terminate the interview, or that he was not free to leave. No restraints of any kind were used or

4

involved. Howard made his first incriminating response approximately two minutes into his interaction with the detective.[2]

Only Det. Stackpole participated in the interview, and the other officers all remained outside of the gargage, "milling around". None of the other officers are heard to speak during the interview. Howard's mother, grandfather, and other associates all remained in the garage during the entire interview, and were never asked to leave by the officers. They can be heard speaking from time-to-time.

The court has listened to the recording of the interview, which is about 20 minutes in length. Through it's entirety, Det. Stackpole always spoke in a calm, cordial and polite manner, and with a non-aggressive and non-confrontational demeanor. The court heard no evidence of an over-bearing or over-powering interrogation and heard no evidence of police trickery or making of false promises. Similarly, Howard himself was calm, polite and cooperative through the entire interview. Howard also sounded composed, rational, and was not overly emotional. Although Howard had been drinking, there was nothing in the presentation of his voice in the recording of the interview to suggest he was impaired. This is consistent with Det. Stackpole's testimony that from his observations of Howard he was not concerned that alcohol affected his ability to think rationally. From listening to the recording, the court finds that both Det. Stackpole and Howard spoke with one-another in a calm, cordial, rational manner, and that the interrogation was non-

---

[2] This is based upon the finding the recorder was turned on about 30 seconds after engagement, and less than two minutes into the recording Howard stated "lets make it easy".

5

confrontational, contained no trickery, deception, or overbearing practices, and that no false promises were made.

Although occurring after Howard had made incriminating statements, the recording reveals additional evidence indicative of the setting. At approximately 8 minutes, 42 seconds into the interview, Howard's mother is heard asking "..you're going to arrest him?", to which there was an immediate response of "no". And during the interview Howard was allowed to smoke.

## DISCUSSION

The Defendant contends he was in custody at the time he was interviewed by Det. Stackpole in his mother's garage, and was not provided his *Miranda* warnings. The law is clear that a *Miranda* warning is necessary only if a defendant is: (1) in custody; and (2) subject to interrogation. Statements made by a person subjected to custodial interrogation who is not first given *Miranda* warnings are inadmissible against that person at trial. *State v. Nadeau,* 2010 ME 71, ¶53, 1 A.3d 445, 464 (internal citations and punctuation omitted) A person, who is not subject for formal arrest, may be in custody if a reasonable person standing in the shoes of the defendant would have felt that he was not at liberty to terminate the interrogation and leave or if there was a formal arrest or restraint on freedom of movement. *Id.* The State must prove that police conduct was constitutionally valid by a preponderance of the evidence. *State v. Kittredge,* 2014

ME 90, ¶ 17, 97 A.3d 106. Courts consider the totality of a number of factors in making the objective determination if a person is in custody. Those factors include:

1. the locale where the defendant made the statements;

2. the party who initiated the contact;

3. the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

4. subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

5. subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave; 17

6. the focus of the investigation (as a reasonable person in the defendant's position would perceive it.)

7. whether the suspect was questioned in familiar surroundings;

8. the number of law enforcement officers present;

9. the degree of physical restraint place upon the suspect; and

10. 10 the duration and character of the interrogation. *Nadeau* at ¶54.

The State does not dispute that the detective subjected the Defendant to an interrogation and that he was not provided with *Miranda* warnings. The question is whether he was in custody.

7

Some of the factors listed above could suggest Howard was in custody when interviewed by Det. Stackpole. The interview was initiated by Det. Stackpole, when he appeared unannounced at Howard's mother's home. And Det. Stackpole was accompanied by three other officers, all revealing their badges and with their duty-issued firearms. And Det. Stackpole never directly told Howard he could leave or terminate the interview.

On the other hand, there are numerous factors more suggestive of a non-custodial interrogation. The interview took place in Howard's mother's garage, a place at which he was highly familiar and comfortable (a place he asscociated with family and friends, socializing, drinking beer and playing darts). No restraints were used. Howard was never told he could not leave. Howard never stated anything suggesting he did not think he could leave or end the interview. The interview was always cordial. Howard was never exposed to police trickery or an overbearing interrogation. Howard's mother, grandfather and friends all remained in the garage, a short distance away. Although Det. Stackpole was accompanied by three other officers, the other officers all remained outside of the garage and did not participate in the interview. And, the entire interview lasted just over 20 minutes, but, critically important, Howard began making his incriminating responses just two minutes into the interview.

In support of his motion, Howard has focused on Det. Stackpole's "easy way-hard way" approach, and that the hard was was for him to "get" an arrest warrant. Howard argues this left him with no real options. And the court acknowledges Det. Stackpole told

8

Howard he had incriminating evidence and that he knew he went into the Kelley home.[.] But this has never been viewed as an unacceptable police practice. Det. Stackpole did not tell Howard he was going to arrest him, or that he "had" an arrest warrant. To the contary, what he told Howard was that the hard way was for him to "get" an arrest warrant or whatever else he needed if Howard did not want to do it the "easy way".

Considering the totality of the circumstances, the court finds Det. Stackpole's questioning of Howard bore none of the elements of coercion or compulsion that Miranda seeks to provide protection against. Accordingly, the court concludes that Howard was not in custody at the time of his interview by Det. Stackpole.

Although Howard primarily raised "custodial interrogation" as his basis for suppression, at hearing some argument was raised towards whether the confessions were voluntary. Only a voluntary confession is admissible into evidence, and the State must prove voluntariness beyond a reasonable doubt. *State v. Kittredge,* 2014 ME 90 P.24;*State v. McCarthy,* 2003 ME 40, P.12, 819 A.2d 335, 340. The court must consider the totality of the circumstances in determining whether a confession is voluntary. *State v. Lockhart,* 2003 ME 108, ¶ 30, 830 A.2d 433,444. A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all the circumstances its admission would be fundamentally fair. *State v. Coombs,* 1998 ME 1,¶10. See also *State v. Mikulewicz* , 462 A.2d 497, 501(Me. 1983). In making

---

[.] Even if Howard was the "focus" of the criminal investigation, that fact alone would not be sufficient to convert a non-custodial setting into a custodial one requiring Miranda warnings. *State v. Higgins,* 2002 ME 77,¶ 16, 796 A.2d 50,55.

its decision of voluntariness, the court may consider the following factors: the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of Miranda warnings; the number of officers involved; the persistence of the officers; police trickery, threats, promises or inducements made to the defendant; the defendant's age, physical, mental health, emotional stability, and conduct. *Id.* citing *State v. Sawyer*, 2001 ME 88 ¶9, 772 A.2d at 1176. *State v. Hunt*, 2016 ME 172, P. 22.

The facts previously discussed by the court lead to a similar conclusion the confession was voluntarty. The interrogation occurred in a setting particularly familiar to Howard, his mother's garage, with his family within a few feet. The questioning occurred in an open garage. The style and manner of questioning was calm and cordial, and was not threatening or coercive. Det. Stackpole merely presented Howard with the "easy way/hard way" approach. This was not police trickery. At best, it was a an attempt to play upon Howard's sensibilities of doing the right thing. And there were no false promises of leniency.

In addition, at the time of the interview Howard was 26 years old. As discussed, from listening to the recording of the interview, the court does not discern Howard to have been irrational or emotional during his interview, and he sounded fully competent. And particularly telling, Howard began confessing within the first two to three minutes of the interview, the interview itself lasting only 20 minutes. The court finds the State has proven beyond a reasonable doubt that Howard's confession was voluntary.

The entry shall be: Defendant's Motion to Suppress Statements is denied.

February 14, 2020

Harold Stewart, II

Justice, Superior Court