2011 ME 36

**STATE of Maine**

v.

**Robert W. WILLIAMS.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 24, 2011.

Decided: March 22, 2011.

James A. Billings, Esq., Lipman, Katz & McKee, PA, Augusta, ME, for Robert W. Williams.

Evert Fowle, District Attorney, James G. Mitchell, Asst. Dist. Atty., Kennebec County Courthouse, Augusta, ME, for the State of Maine.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Robert W. Williams appeals from a judgment of conviction for gross sexual assault (Class A), 17–A M.R.S. § 253(1)(C) (2010), and unlawful sexual contact (Class B), 17–A M.R.S. § 255–A(1)(E–1) (2010) entered in the Superior Court (Kennebec County, *Mills, J.*) following a jury trial. Williams challenges the court's (*Marden, J.*) denial of his motion to suppress on the ground that he was in custody at the time he made incriminating statements to the police.[1] Because we determine that Williams was not in custody at the time of the interrogation, we affirm the judgment of conviction.

## I. BACKGROUND

[¶ 2] On June 5, 2009, a Maine State Police trooper went to Williams's residence and asked Williams to talk with him inside his cruiser. Due to earlier contacts with law enforcement, Williams knew that the trooper was there to discuss allegations that Williams had had sexual contact with a family member's child. The cruiser was parked in Williams's driveway, and the trooper's dog was in the back of the cruiser behind animal caging. The interrogation lasted a little over an hour and was recorded by a video camera inside the trooper's cruiser.[2] The trooper advised Williams that he was not under arrest at the beginning of the interrogation, but did not advise Williams of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). During the interrogation, Williams admitted to en-

---

1. Although Williams also challenges several findings of fact underlying the court's determination that he was not in custody, there is competent evidence to support each finding. *See State v. Dumas*, 2010 ME 57, ¶ 12, 997 A.2d 760, 764; *State v. Poblete*, 2010 ME 37, ¶ 21, 993 A.2d 1104, 1109.

2. Because the cruiser's camera was aimed at Williams's residence, the trooper and Williams are not in view on the video; the camera was used solely to obtain an audio recording of the interrogation.

gaging in some sexual conduct involving the child, but consistently denied an allegation that he engaged in a specific act with the child.

[¶ 3] Williams was subsequently charged with gross sexual assault (Class A), 17–A M.R.S. § 253(1)(C), and unlawful sexual contact (Class B), 17–A M.R.S. § 255–A(1)(E–1). He pleaded not guilty to both charges.

[¶ 4] On October 23, 2009, Williams moved to suppress the statements he made to the trooper on June 5, 2009, alleging that the trooper was required to advise him of his *Miranda* rights. *See Miranda,* 384 U.S. at 467–79, 86 S.Ct. 1602. In January 2010, the court conducted a hearing on Williams's motion. At the hearing, the State offered the trooper's testimony, and Williams testified on his own behalf. In addition, the audio recording of the trooper's interrogation of Williams was admitted in evidence and considered by the court. The court denied the motion to suppress based on its determination that Williams was not in custody at the time of the interrogation.

[¶ 5] Following a two-day jury trial in April 2010, Williams was convicted of gross sexual assault and unlawful sexual contact. Although the State did not offer the audio recording in evidence, at trial, the trooper testified to the statements Williams made during the June 5, 2009, interrogation. The court entered a judgment on the verdict and sentenced Williams to twenty-three years of imprisonment with all but thirteen years suspended, followed by six years of probation for gross sexual assault, and seven concurrent years of imprisonment for the unlawful sexual contact. This appeal followed.

## II. DISCUSSION

[¶ 6] Williams argues that because he was in custody on June 5, 2009,

while speaking with the trooper, the court erred in denying his motion to suppress the statements he made to the trooper. The issue of custody is a mixed question of fact and law. *State v. Poblete,* 2010 ME 37, ¶ 21, 993 A.2d 1104, 1109. "We give deference to the trial court's factual determinations, but the determination of whether an individual was in custody requires an independent *de novo* review." *Id.* (quotation marks omitted).

[¶ 7] Statements made during a custodial interrogation are admissible only if the person making the statements has been "advised of the rights referred to in *Miranda v. Arizona.*" *State v. Dion,* 2007 ME 87, ¶ 21, 928 A.2d 746, 750; *accord State v. Nadeau,* 2010 ME 71, ¶ 53, 1 A.3d 445, 464. In this case, the parties do not dispute that Williams was subject to police interrogation, and, therefore, the only issue is whether he was in custody at the time. We consider ten factors in totality to determine whether a person was "in custody":

(1) the locale where the defendant made the statements;

(2) the party who initiated the contact;

(3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

(4) subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

(7) whether the suspect was questioned in familiar surroundings;

(8) the number of law enforcement officers present;

(9) the degree of physical restraint placed upon the suspect; and

(10) the duration and character of the interrogation.

*Nadeau,* 2010 ME 71, ¶ 54 n. 11, 1 A.3d at 464–65 (quotation marks omitted).

[¶ 8] Applying those factors to the facts of this case, the trial court determined that Williams was not in custody during the interrogation on June 5, 2009. We agree. There was only a single law enforcement officer present, and that officer advised Williams he was not under arrest before starting the interrogation. Although the interrogation was conducted inside a police cruiser, that cruiser was parked in Williams's dooryard, within yards of his home. Williams was certainly familiar with the surroundings. Williams was never physically restrained, and he had no reason to perceive that he was not free to leave based on the trooper's statements or conduct. Williams did not communicate any apprehension to the trooper, did not ask to end the interrogation,[3] and did nothing that would manifest a desire to terminate the interrogation. During the entire interrogation, the tone of both parties was calm and measured. Accordingly, we conclude that Williams was not in custody during the interrogation on June 5, 2009, and we affirm the judgment.

The entry is:

Judgment affirmed.

---

**3.** At one point during the interrogation, Williams complained of being cold and asked if they could continue the conversation outside of the cruiser. The trooper turned down the air conditioner, and Williams made no other suggestions about leaving the cruiser.