MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2017 ME 27
Docket:      And-16-172
Argued:      December 13, 2016
Decided:     February 7, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

WALLACE W. AMES III

MEAD, J.

[¶1]  Wallace W. Ames III appeals from a judgment of conviction of burglary (Class C), 17-A M.R.S. § 401(1)(A) (2016), and theft by unauthorized taking or transfer (Class E), 17-A M.R.S. § 353(1)(A) (2016), entered in the trial court (Androscoggin County, *Mathews, J.*) on his conditional guilty plea.  Ames argues that the court (*L. Walker, J.*) erred in denying his motion to suppress statements, made during an interview with police while he was detained in the Androscoggin County Jail awaiting a court appearance for a probation violation on an unrelated charge, because he was not given *Miranda* warnings prior to what he asserts was a custodial interview.  We affirm the judgment.

## I. BACKGROUND

[¶2]  Viewed in the light most favorable to support the suppression court's decision, the record on the motion to suppress supports the following facts.  *See State v. Ntim*, 2013 ME 80, ¶ 2, 76 A.3d 370; *see also State v. Bryant*, 2014 ME 94, ¶ 2, 97 A.3d 595.  On June 3, 2015, Detective Tyler Michaud of the Lewiston Police Department was assigned to investigate a burglary reported to have occurred at a restaurant in Lewiston on May 29, 2015.  During the course of his investigation, he learned that Ames had been an employee at the restaurant and had keys to the building.  At that time, Ames was on probation for a domestic violence assault conviction.  On June 4, 2015, Ames was arrested on a probation violation arising from a positive drug test, taken into custody, and held at the Androscoggin County Jail.

[¶3] On June 8, 2015, Detective Michaud and Detective Carly Conley, also from the Lewiston Police Department, went to the jail to interview Ames about his involvement in the burglary.  The officers were not in uniform and not wearing duty belts, and they left their firearms at a secure location when they entered the jail.  Their interview with Ames took place in the visitation room, which is a large, well-lit room with windows.  A long table with chairs on both sides was located in the middle of the room.  During the interview, Ames sat on

one side of the table and the officers sat on the other side; Ames and the officers were a few feet apart at a "normal conversational distance." The detectives did not sit between Ames and the door, and there were no obstacles between Ames and the door. There was no one else in the room and no guard at the door. The interview was recorded.

[¶4] At the outset of the interview, Detective Conley introduced herself and Detective Michaud and confirmed with Ames that he was currently in jail on a probation violation because his urine tested positive for drugs. She told Ames that "what we want to talk to you about has nothing to do with that," that he was "here on [his] own free will," and that he was free to leave and go back to his cell at any time because jail was his "home" for the time being. She asked Ames if he felt comfortable speaking to them, and Ames said he was "interested in hearing what you have to say." Ames was not given *Miranda* warnings.

[¶5] The detectives mentioned that they had talked to Ames's probation officer and it had seemed like Ames was doing well on probation until he tested positive for drugs. Detective Michaud said that what happens with probation is "not our business right now" and he had "no idea what they're trying to do," but he encouraged Ames to "clear the table" and "put this behind us," so that it doesn't "come[] back up to bite you." Detective Michaud told Ames that "there's

4

really no doubt in my mind that you went in and took some money," and encouraged Ames to cooperate, because otherwise, "we're going to end up proving it . . . and then what will happen is you'll be back on track with probation and we're going to have to derail you again instead of just addressing it right now and moving forward." Ames continued to deny involvement.

[¶6] Ames asked what sentence a theft carries. Detective Michaud explained that it could be a fine, and suggested that from his experience, courts consider whether the theft was related to a drug problem. Ames confessed immediately thereafter, saying, "I did it. It was me." The confession occurred approximately fifteen minutes into the interview. The detectives continued to speak with Ames regarding the details of the crime and some wholly unrelated matters for another fifteen minutes.

[¶7] On August 4, 2015, Ames was indicted on one count of burglary (Class C), 17-A M.R.S. § 401(1)(A), and one count of theft by unauthorized taking or transfer (Class E), 17-A M.R.S. § 353(1)(A). On December 7, 2015, Ames filed a motion to suppress the incriminating statements he made during the interview, arguing that he should have been given *Miranda* warnings because he was in custody at the time of the interview. A hearing on the motion was held on December 30, 2015, at which Detective Michaud testified, and the

audio recording of the interview was admitted in evidence. On January 7, 2016, the court denied the motion to suppress.

[¶8]  On February 10, Ames filed a motion for findings of fact and conclusions of law pursuant to M.R.U. Crim. P. 41A(d) that the court granted pending resolution of the case at the dispositional conference.

[¶9]  On February 18, Ames entered a conditional guilty plea to the two charges. He was sentenced to five years' incarceration, with all but six months suspended, with two years of probation on the burglary count and to thirty days in jail, to be served concurrently, on the theft count. *See* M.R.U. Crim. P. 11(a)(2). The plea was preserved for appeal and conditioned on our review of the motion court's order denying Ames's motion to suppress. On March 3, 2016, the court entered an order on the motion to suppress that included findings of fact and conclusions of law. Ames timely appealed. *See* M.R. App. P. 2(b)(2)(A); 15 M.R.S. § 2115 (2016).

## II.  DISCUSSION

[¶10]  Ames argues that he was in custody at the time of the interview and therefore should have been given *Miranda* warnings prior to being questioned. His primary assertion is that his detention in jail at the time of the

6

interview was a circumstance that created an atmosphere of coercion amounting to custody.

[¶11] We ordinarily "review the denial of a motion to suppress for clear error as to factual issues and de novo as to issues of law." *State v. Ormsby*, 2013 ME 88, ¶ 9, 81 A.3d 336 (quotation marks omitted); *see State v. Nadeau*, 2010 ME 71, ¶ 15, 1 A.3d 445. "When a ruling on a motion to suppress is based primarily on undisputed facts, it is viewed as a legal conclusion that is reviewed de novo."[1] *State v. King*, 2016 ME 54, ¶ 14, 136 A.3d 366 (quotation marks omitted). We "will uphold the court's denial of a motion to suppress if any reasonable view of the evidence supports the trial court's decision." *State v. Kittredge*, 2014 ME 90, ¶ 15, 97 A.3d 106 (quotation marks omitted).

[¶12] *Miranda* warnings are necessary only when a defendant is both "in custody" and "subject to interrogation." *Nadeau*, 2010 ME 71, ¶ 53, 1 A.3d 445 (quotation marks omitted). "Statements made by a person subjected to custodial interrogation who is not first given *Miranda* warnings are inadmissible against that person at trial." *Id.*; *see Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). There is no dispute that Ames was subjected to interrogation, so the only issue before us is whether Ames was in custody when

---

[1] Because Ames does not challenge the court's findings of fact, our analysis is limited to de novo review of the issue of whether Ames was subjected to a custodial interrogation.

he made incriminating statements to the officers. At the suppression hearing, the State had the burden to prove, by a preponderance of the evidence, that Ames was not in custody. *State v. Prescott*, 2012 ME 96, ¶ 10, 48 A.3d 218.

[¶13] "An interrogation is custodial if a reasonable person standing in the shoes of [the defendant] would have felt he or she was not at liberty to terminate the interrogation and leave." *State v. Jones*, 2012 ME 126, ¶ 22, 55 A.3d 432 (alteration in original) (quotation marks omitted). We consider various factors in making this objective determination, including

(1) the locale where the defendant made the statements;

(2) the party who initiated the contact;

(3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

(4) subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

(7) whether the suspect was questioned in familiar surroundings;

(8) the number of law enforcement officers present;

(9) the degree of physical restraint placed upon the suspect; and

(10) the duration and character of the interrogation.

*State v. Bryant*, 2014 ME 94, ¶ 10, 97 A.3d 595 (quotation marks omitted). These factors are considered "in their totality, not in isolation." *Jones*, 2012 ME 126, ¶ 22, 55 A.3d 432 (quotation marks omitted).

[¶14]  Several factors weigh against a determination that Ames was in custody.  The suppression court found that only two law enforcement officers were present during the interview, and that they were unarmed and in plain clothes, *see Kittredge*, 2014 ME 90, ¶¶ 7, 18, 97 A.3d 106 (noting that the presence of "only" two state troopers, who were in uniform and armed, weighed against a finding of custody); the detectives told Ames that he was free to leave the interview and go back to his cell at any time; the room where the interview took place was "large" and "well-lit"; there were no obstructions between Ames and the door; Ames sat on one side of the table and the officers sat on the other; and no physical restraint or force was used.  Moreover, the court found that the interview lasted approximately thirty-nine minutes and Ames made incriminating statements fifteen minutes into the interview.  *See id.* ¶ 18 (noting that the fact that an interrogation lasted forty-five minutes

to one hour weighed against a finding of custody). It also found that the interrogation was "conducted in a professionally pleasant manner," was "conversational" in nature, and that the officers "were not menacing, loud or otherwise intimidating in their tone, tenor or substance of their questions." *See State v. Dion*, 2007 ME 87, ¶ 29, 928 A.2d 746; *State v. Higgins*, 2002 ME 77, ¶ 15, 796 A.2d 50.

[¶15] Ames argues that the circumstances of the interview—he was detained in a county jail on a probation violation while awaiting a court appearance—created an atmosphere of restraint and coercion that amounted to a custodial interview. He acknowledges that the detectives advised him that he could stop the interview and return to his cell at any time.

[¶16] We have not yet addressed the discrete issue of whether a defendant who is incarcerated is, by definition, in custody for purposes of interrogation by police. The United States Supreme Court has recently addressed this issue in *Howes v. Fields*, 565 U.S. 499 (2012). In that case, Fields was serving a sentence in jail when he was brought to a conference room by a corrections officer. *Id.* at 502. There, two sheriff's deputies questioned Fields for five to seven hours about allegations that before his incarceration, he committed a sexual offense against a twelve-year-old boy. *Id.* at 502-03. Fields

was not wearing any restraints during the interview and was told that he could leave at any time. *Id.* at 503. The sheriffs were armed during the interview, and the door to the conference room was sometimes open. *Id.* Fields eventually confessed, but he was neither given *Miranda* warnings nor advised that he did not have to speak with the sheriffs. *Id.* at 503-04.

[¶17] The Supreme Court declined to adopt a categorical rule that imprisonment alone constitutes custody for the purposes of *Miranda*. *Id.* at 508, 512. The Court cited three grounds for this conclusion. *Id.* at 511-12. First, it explained that "questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest." *Id.* at 511. It noted the "sharp and ominous change" that occurs when a person is arrested and taken to a police station for questioning, and said that, "[b]y contrast, when a person who is already serving a term of imprisonment is questioned, there is usually no such change" in circumstances leading to those "inherently compelling pressures." *Id.* (quotation marks omitted).

[¶18] Second, the Court explained that "a prisoner, unlike a person who has not been sentenced to a term of incarceration, is unlikely to be lured into speaking by a longing for prompt release." *Id.* The Court explained that while a person arrested and taken to a station house for questioning "may be

pressured to speak by the hope that, after doing so, he will be allowed to leave and go home," a prisoner "knows that when the questioning ceases, he will remain under confinement." *Id.*

[¶19] Third, the Court reasoned that "a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence." *Id.* at 512. It continued: "When the suspect has no reason to think that the listeners have official power over him, it should not be assumed that his words are motivated by the reaction he expects from his listeners." *Id.* (quotation marks omitted). "Under such circumstances," the Court explained, "there is little basis for the assumption that a suspect will feel compelled to speak by the fear of reprisal for remaining silent or in the hope of a more lenient treatment should he confess." *Id.* (alterations and quotation marks omitted).

[¶20] The Court concluded that Fields was not in custody for purposes of *Miranda*. *Id.* at 514. It determined that some facts weighed in favor of a finding of custody, such as that Fields was never told he could decline to speak to the deputies, the interview lasted for five to seven hours, his interviewers were armed, and one deputy "[u]sed a very sharp tone." *Id.* at 515 (alteration in original) (quotation marks omitted). However, these circumstances were

12

offset by others, including that Fields was told he could leave and go back to his cell whenever he wanted, he was not physically restrained, the interview occurred "in a well-lit, average-sized conference room," and "the door to the room was sometimes left open." *Id.* The Court held that these facts were "consistent with an interrogation environment in which a reasonable person would have felt free to terminate the interview and leave." *Id.* (quotation marks omitted).

[¶21] Applying the federal precedent from *Howes* to this case,[2] we decline to adopt a bright-line rule that the circumstance of incarceration, without more, makes an interview custodial for purposes of *Miranda* warnings. The fact that an interrogation takes place while a suspect is incarcerated must certainly be considered as part of our well-established totality of the circumstances approach to determine whether an interview is custodial, but we find persuasive the Supreme Court's analysis supporting the conclusion that imprisonment alone does not constitute *Miranda* custody: (1) that "questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest"; (2) that "a prisoner, unlike a person who has not been sentenced to a term of incarceration, is unlikely to be lured

---

[2] Ames has made clear that his argument is predicated entirely on federal authority.

into speaking by a longing for prompt release"; and (3) that "a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence." *Howes*, 565 U.S. at 511-12.

[¶22] Considering all of the relevant factors in their totality, we conclude that the trial court did not err by determining that Ames was not in custody within the meaning of *Miranda* when he was interviewed by the detectives.[3] Accordingly, we affirm the court's denial of Ames's motion to suppress.

The entry is:

Judgment affirmed.

---

[3] We distinguish the issue of whether Ames was in custody from the issue of the voluntariness of his confession. For a confession to be admissible, it must be made voluntarily. *State v. Kittredge*, 2014 ME 90, ¶ 24, 97 A.3d 106. "A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *State v. Mikulewicz*, 462 A.2d 497, 501 (Me. 1983). Whether an officer made "threats, promises or inducements" to the defendant to secure a confession is one of many factors we consider in determining whether a confession was voluntary. *State v. Lavoie*, 2010 ME 76, ¶ 18, 1 A.3d 408 (quotation marks omitted). Ames makes no argument regarding voluntariness.

Several of the detectives' statements throughout Ames's interview suggested that Ames's cooperation with the investigation could affect the outcome of probation revocation proceedings. While such statements may be considered under a voluntariness analysis, the issue is not before us and we decline to address it.

Mark J. Peltier, Esq. (orally), Rioux, Donahue, Chmelecki & Peltier, LLC, Portland, for appellant Wallace W. Ames III

Andrew Robinson, District Attorney, Lisa Bogue, Asst. Dist. Atty., and Andrew Matulis, Asst. Dist. Atty. (orally), Prosecutorial District III, Lewiston, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2015-645
FOR CLERK REFERENCE ONLY