MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 73
Docket:       Som-16-66
Argued:       February 6, 2017
Decided:      April 25, 2017
Corrected:    July 27, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

JASON C. COTE

JABAR, J.

[¶1]  Jason C. Cote appeals from a judgment of conviction entered by the trial court (Somerset County, *Horton, J.*) after a jury found him guilty of one count of murder, 17-A M.R.S. § 201(1)(A) (2016).  Cote argues that (1) the motion court erred in denying his motion to suppress in part; (2) the State's attorney committed prosecutorial misconduct when she referenced Cote stomping on the victim's head in both her opening statement and closing argument; and (3) there was insufficient evidence in the record upon which the jury could find him guilty of murder beyond a reasonable doubt.  We affirm the judgment.

## I. BACKGROUND

[¶2]  The jury rationally could have found the following facts based on the evidence, which we view in the light most favorable to the jury's verdict. *See State v. Pratt*, 2015 ME 167, ¶ 2, 130 A.3d 381.  At the time of his death, the victim was a drug dealer and the defendant, Jason Cote, was one of his customers.

[¶3]  On the evening of July 17, 2013, Cote received a text message from the victim asking Cote to come to the victim's residence in Detroit.  Cote agreed and walked to the victim's trailer, where the two proceeded to smoke marijuana.  After making "small talk," the victim confronted Cote about Cote's role in misleading agents from the Bureau of the Alcohol, Tobacco, Firearms and Explosives who were conducting an investigation of the victim.  Cote, who had previously agreed to lie to the investigators on the victim's behalf, told the victim that he was having second thoughts about his continued involvement in the scheme.  A physical altercation ensued, and Cote, using a metal pipe, bludgeoned the victim to death, striking him multiple times in the head.

[¶4]  On September 6, 2013, Cote was charged by indictment with murder, 17-A M.R.S. § 201(1)(A), and he subsequently entered a not guilty plea.

3

A.    Motion to Suppress

[¶5]  Before trial, Cote moved to suppress statements he made to law enforcement officials prior to his arrest.  A hearing on his motion was held on May 1, 2014.  At the conclusion of the hearing, the motion court made the following findings, which are supported by the record.  *See State v. Lovett*, 2015 ME 7, ¶ 3, 109 A.3d 1135.

[¶6]  On the morning after the victim's death, a detective from the Maine State Police and several other law enforcement officers arrived at the residence of Cote's friends where Cote had slept the previous night.  From outside the residence, the detective placed a call to Cote's cell phone.  When Cote answered the call, he initially lied about his whereabouts, informing the detective that he was driving around Palmyra.  The detective then revealed that he knew that Cote was inside the home and asked him to come outside to speak with him.  Cote agreed and walked to the bottom of the driveway, where he was greeted by the detective.  The detective invited Cote to speak with him in the back of his cruiser and Cote agreed.

[¶7]  Over the course of the morning, the detective asked Cote a number of questions concerning his whereabouts on the day of the victim's death, but he did not readily reveal that he was investigating a homicide or that Cote's

name had come up in the early stages of that investigation. The detective did, however, consistently inform Cote that he was not under arrest and that his involvement in the interview was voluntary. The interview was conducted in a calm manner and the detective allowed Cote to make and receive phone calls and to take breaks to smoke cigarettes and relieve himself.

[¶8] Eventually, the detective informed Cote that he was conducting an investigation into the death of the victim and that Cote was a person of interest. Cote continued his willing participation in the interview until around 12:40 p.m., approximately three hours after the interview began, when he inquired as to what the next steps in the process would be and informed the detective that he had things to do later that day. The detective largely ignored these concerns, however, and continued with the interview, obtaining additional statements; conducting a consented to search of Cote's trailer; taking pictures of his injuries, phone logs and text messages; and obtaining a DNA sample.

[¶9] After this initial interview on July 18, the detective interviewed Cote twice more: once on July 23 at the home of an acquaintance and again immediately preceding his arrest on July 24 at his grandparents' house. At no time before his arrest on July 24 was Cote administered *Miranda* warnings.

[¶10]  After the hearing, the court (*Horton*, *J.*) granted Cote's motion to suppress in part, concluding that he was in custody for *Miranda* purposes beginning at 12:44 p.m. on July 18, and that because he was not given the requisite *Miranda* warnings at that time, any statements he made after that point would be suppressed.  The court denied, however, Cote's motion insofar as it pertained to statements obtained prior to 12:44 p.m. on July 18, or those obtained on July 23 and 24, because he was not in custody during those interactions.  The court also concluded that the noncustodial statements obtained on July 23 and 24 were not "tainted" by the July 18 *Miranda* violation, and thus did not warrant suppression under that theory either.

B.    Trial

[¶11]  Beginning on December 10, 2015, a six-day trial was held on Cote's murder charge.  At trial, Cote testified that on the night of the victim's death, the victim threatened him with a knife and that he acted in self-defense when he struck the victim with the pipe.  The State presented evidence contesting Cote's version of events surrounding the victim's death. Specifically, the State elicited testimony from the State's Chief Medical Examiner, who conducted an autopsy of the victim.  The medical examiner testified that the victim suffered numerous injuries, including a "hinge

fracture," or a horizontal break at the base of the skull spanning ear to ear. He explained that this fracture was caused by a "significant force" coming down on one side of the victim's face while his head was "not moveable," as if resting against the floor. When asked whether the hinge fracture he observed could have been the result of stomping, the medical examiner responded that it was very possible, explaining that

> [a] hinge fracture requires a lot of force, it requires the head to be in a fixed position. If the head were on the ground, it is in a fixed position, it actually makes more sense because the right side of his face did have some injury, there was wide surface area, which can correspond very nicely with the wide surface area of a boot, or shoe, or bottom of a foot. The force could certainly be enough to fracture the skull if the stomping or stepping were significant *so, yes, it is very, very possible that that is a reasonable mechanism*.

(emphasis added).

[¶12] The State's attorney used this testimony to refute Cote's self-defense claim, arguing during her closing, for instance, that "[a]t that point he claimed that [the victim] was still alive, he could have left, but instead he then stomps on [the victim's] head, and we know that occurred because [the medical examiner] told you that that hinge fracture . . . is consistent with a person's head being stomped on."[1]

---

[1] In total, the State's attorney made approximately ten references to "stomping" in her opening statement, and another eight such references in her closing argument.

7

[¶13]  On December 17, 2015, the jury returned a guilty verdict on the sole murder count charged.  Cote was subsequently sentenced to forty-five years' imprisonment.

## II.  DISCUSSION

A.    Partial Denial of Motion to Suppress

[¶14]  Cote argues that the motion court erred in concluding that he was not in custody for *Miranda* purposes prior to 12:44 p.m. on July 18, 2013, and consequently denying his motion to suppress the statements he made to law enforcement officers that morning.  He also contends that the court erred in denying his motion with regard to the statements he made on July 23 and 24 on the ground that these statements, while noncustodial in nature, were "tainted" by the portion of the July 18 interview conducted in violation of *Miranda*.

1.    Standard of Review

[¶15]  In an appeal of a denial of a motion to suppress, we review the motion court's factual findings for clear error and its "ultimate determination of whether the statement should be suppressed" de novo.  *State v. Bragg*, 2012 ME 102, ¶ 8, 48 A.3d 769 (quotation marks omitted).  Whether Cote was in custody prior to 12:44 p.m. on July 18, 2013, is a mixed question of law and

fact. *See State v. Dion*, 2007 ME 87, ¶ 22, 928 A.2d 746. "We give deference to the trial court's factual determinations, but the determination of whether an individual was in custody requires an independent *de novo* review." *Id.* (quotation marks omitted).

2.     Custody Determination

[¶16]    *Miranda* warnings are only required when a person is "in custody" and "subject to interrogation." *State v. Ames*, 2017 ME 27, ¶ 12, --- A.3d --- (quotation marks omitted). There is no dispute that during all three interviews, Cote was "subject to interrogation." *Id.* Cote, however, contests the court's determination that he was not "in custody," and therefore not entitled to *Miranda* warnings prior to 12:44 p.m. on July 18. *Id.* If Cote was "in custody" prior to this time, absent *Miranda* warnings, his statements would not be admissible against him in the State's case-in-chief. *Id.; see State v. Philbrick*, 436 A.2d 844, 848 (Me. 1981).

[¶17]    When determining whether a person was "in custody" for *Miranda* purposes, the court's inquiry focuses on "whether a reasonable person in the defendant's position would have believed he was in police custody and constrained to a degree associated with formal arrest." *State v.*

*Michaud*, 1998 ME 251, ¶ 4, 724 A.2d 1222 (quotation marks omitted). In conducting this analysis, a court may consider several factors, including

(1) the locale where the defendant made the statements;

(2) the party who initiated the contact;

(3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

(4) subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

(7) whether the suspect was questioned in familiar surroundings;

(8) the number of law enforcement officers present;

(9) the degree of physical restraint placed upon the suspect; and

(10) the duration and character of the interrogation.

*Id.*

[¶18] Here, the court did not err in concluding that a reasonable person in Cote's position would not have believed he "was in police custody and

constrained to a degree associated with formal arrest" prior to 12:44 p.m. on July 18 because, as discussed below, the court's findings, when reviewed through the lens of these factors, support that conclusion. *Id.* Although the detective interviewed Cote in his cruiser, the interaction took place near the home of Cote's friends. *See State v. Williams*, 2011 ME 36, ¶ 8, 15 A.3d 753 (concluding that the defendant was not in custody when he was interviewed by one officer inside a police cruiser parked yards from his home). The motion court also found that the detective conducted the interview in a non-aggressive manner and repeatedly informed Cote that his participation was voluntary. *See id.*; *Dion*, 2007 ME 87, ¶ 6, 928 A.2d 746. Further, the court found that the detective allowed Cote to make and receive phone calls and to take breaks to smoke cigarettes over the course of the morning. *See State v. Higgins*, 2002 ME 77, ¶ 15, 796 A.2d 50. Lastly, the court found that prior to 12:44 p.m., Cote consistently expressed his desire to assist in the investigation and did not manifest a desire to terminate the interaction until, just before 12:44 p.m., he informed the detective that he had other things to do that day. *See Williams*, 2011 ME 36, ¶ 8, 15 A.3d 753. Based on the foregoing, the court's conclusion that Cote was not in custody prior to

12:44 p.m. was rationally supported by the evidence, and therefore the court did not err in denying that portion of Cote's motion to suppress.

3.      "Taint" of July 23 and 24 Statements

[¶19]  Cote does not contest the motion court's conclusion that he was not in custody during his interactions with detectives on July 23 and on July 24 before his arrest.  He argues that the statements he made during these interviews should nonetheless be suppressed because they were tainted by the July 18 *Miranda* violation.

[¶20]  The existence of a *Miranda* violation during the part of the interview beginning at 12:44 p.m. does not, in itself, require suppression of all of Cote's subsequent statements.  *See Oregon v. Elstad*, 470 U.S. 298, 314 (1985).  Rather, statements obtained after a *Miranda* violation may be suppressed where the "violation is not merely technical, where there is a substantial nexus between the violation and the second statement, and where the second statement is not itself preceded by an adequate *Miranda* warning." *United States v. Byram*, 145 F.3d 405, 409-10 (1st Cir. 1998).  When determining whether a *Miranda* violation was "merely technical," the appropriate inquiry focuses on whether the unwarned statement at issue was given voluntarily.  *See United States v. Carter*, 884 F.2d 368, 372 (8th Cir.

1989) ("If the unwarned statement is voluntary, then a subsequent warned confession may be admissible if the prior statement is not the result of deliberately coercive or improper tactics." (quotation marks omitted)); *see also State v. Smith*, 675 A.2d 93, 97 (Me. 1996) (rejecting a defendant's argument that statements given after proper administration of *Miranda* warnings were tainted by a prior *Miranda* violation where the initial unwarned statements were not obtained by coercive tactics).

[¶21]  The motion court did not err in concluding that the *Miranda* violation occurring after 12:44 p.m. on July 18 did not mandate suppression of the July 23 and 24 statements.  First, the record supports a determination that Cote's statements throughout the July 18 interview were given voluntarily, and thus the *Miranda* violation occurring that day was "technical," that is, there is no indication that the statements obtained in violation of *Miranda* were given involuntarily or as a result of coercion or undue influence.  *Byram*, 145 F.3d at 410.  To the contrary, the motion court found that during the July 18 interview, the detective "repeatedly tells Cote that he does not have to answer questions" and that "Cote at all times appears cooperative."

[¶22]  Further, there was no substantial nexus between the statements obtained in violation of *Miranda* and those obtained in the subsequent

interviews. The July 23 and 24 interviews were limited in scope, took place five and six days after the initial *Miranda* violation, and both occurred at locations that were familiar to Cote. Therefore, the court did not err in denying Cote's motion to suppress statements he made during the July 23 and 24 interviews.

B.     Prosecutorial Misconduct

[¶23]     Cote next argues that the State's attorney committed prosecutorial misconduct when she suggested to the jury, both in her opening statement and closing argument, that he stomped on the victim's head.

1.     Standard of Review

[¶24]     Where a party fails to object to statements that allegedly constitute prosecutorial misconduct and that party later asserts on appeal that "those statements . . . deprived [him] of a fair trial, we review for obvious error." *State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032. Here, Cote did not object to the State's attorney's statements at trial, and therefore we will only vacate upon a showing that "there is (1) an error, (2) that is plain, and (3) that affects substantial rights." *State v. Lajoie*, 2017 ME 8, ¶ 22, --- A.3d--- (quotation marks omitted). "Even if these three conditions are met, we will set aside a jury's verdict only if we conclude that (4) the error seriously affects

the fairness and integrity or public reputation of judicial proceedings." *Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032 (quotation marks omitted).

[¶25]  "If the defendant, having failed to preserve the objection at trial, demonstrates on appeal that there was prosecutorial misconduct that went unaddressed by the court, the defendant has met the burden of demonstrating error." *Id*. ¶ 36.  To demonstrate that the error was "plain," however, the defendant must show that the error was "so clear under current law, that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *Id.* (citation omitted) (alteration omitted) (quotation marks omitted).

2.    The State's Attorney's Comments

[¶26]  "[T]he prosecutor has a unique role in the courtroom.  Rather than serving as an advocate for a particular person or entity, the prosecutor is a minister of justice." *State v. Robinson*, 2016 ME 24, ¶ 23, 134 A.3d 828 (quotation marks omitted).  In this unique role, the prosecutor may permissibly "present an analysis of the evidence in summation with vigor and zeal," *Dolloff*, 2012 ME 130, ¶ 41, 58 A.3d 1032 (quotation marks omitted), but may not "[m]isrepresent[] material facts in the record or mak[e] statements of material fact unsupported by any evidence."  *Id.* ¶ 42.  Thus, when

determining whether a prosecutor's summation of the facts rises to the level of misconduct, "the central question is whether the prosecutor's comment is fairly based on the facts in evidence." *State v. Roberts*, 2008 ME 112, ¶ 45, 951 A.2d 803 (alteration omitted) (quotation marks omitted); *see also Dolloff*, 2012 ME 130, ¶ 55, 58 A.3d 1032 (concluding that a prosecutor's statements characterizing what a dog might have been thinking during an alleged assault amounted to misconduct because the statements were not based upon the evidence). Accordingly, we have "repeatedly . . . upheld the prosecutor's ability to argue vigorously for any position, conclusion, or inference supported by the evidence." *State v. Ashley*, 666 A.2d 103, 105 (Me. 1995).

[¶27] The State's attorney's references to stomping in her opening statement and closing argument were permissible because the comments were "fairly based on the facts in evidence," *Roberts*, 2008 ME 112, ¶ 45, 951 A.2d 803 (quotation marks omitted), and constituted an effort by her to "argue vigorously" for a "conclusion, or inference supported by the evidence." *Ashley*, 666 A.2d at 105. The State elicited extensive testimony from the medical examiner, who opined that the "hinge fracture" the victim suffered was likely the result of "a significant force" over his stationary head and that the injury could logically be explained by stomping. Apart from the medical

examiner's concession on cross-examination that it was possible, but not likely, that the hinge fracture was caused by the metal pipe, there was no evidence in the record to refute his opinion that it was "very, very possible" that the injury could have been caused by stomping. Further, although Cote, through his testimony, denied stomping on the victim's head, the State's attorney was free to argue to the jury that, based on the evidence presented, it could arrive at the opposite conclusion. *See State v. Moontri*, 649 A.2d 315, 317 (Me. 1994). Thus, because the State's attorney's references to stomping were fairly based on facts in evidence, her comments did not, in any way, constitute prosecutorial misconduct.

C.     Sufficiency of the Evidence

[¶28]  Finally, Cote argues that the State presented insufficient evidence upon which the jury rationally could have found him guilty of murder, 17-A M.R.S. § 201(1)(A). Viewing the evidence in the light most favorable to the State, however, there was sufficient evidence upon which the jury rationally could have found every element of murder, and that the State had disproved Cote's claim of self-defense, beyond a reasonable doubt. *See State v. Clark*, 2008 ME 136, ¶ 18, 954 A.2d 1066.

The entry is:

Judgment affirmed.

---

Verne E. Paradie, Jr., Esq. (orally), Paradie, Sherman, Walker & Worden, Lewiston, for appellant Jason C. Cote

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Somerset County Unified Criminal Docket docket number CR-2013-689
FOR CLERK REFERENCE ONLY