STATE OF MAINE
CUMBERLAND, ss.

UNIFIED CRIMINAL DOCKET
PORTLAND
Docket No. CR-17-3831

STATE OF MAINE      )
                     )
                     )
                     )
v.                    )     ORDER ON DEFENDANT'S
                     )     MOTION TO SUPPRESS
                     )
SEAN O'CONNELL    )
                     )
   Defendant       )

Defendant's Motion to Suppress came before the court for hearing on December 7, 2017. Defendant, Sean O'Connell, was present with his lawyer, Attorney Adam Sherman. Assistant District Attorney Carlos Diaz appeared on behalf of the State. The court heard testimony from Maine State Trooper Patrick Flanagan and viewed a video recording of Defendant's questioning by Trooper Flanagan in chambers after the hearing concluded. Defendant contends that he was subjected to custodial interrogation without having been provided the required Miranda warnings, and that accordingly the statements he made to Trooper Flanagan should be suppressed.

"In order for the statements made prior to a Miranda warning to be admissible, the State must prove, by a preponderance of the evidence, that the statements were made while the person was not in custody, or was not subject to interrogation." *State v Bridges*, 2003, ME 103, 829 A.2d 247, 254. The appropriate analysis for this determination is set forth in *State v. Dion*, 2007 ME 87, ¶ 23, 928 A.2d 746, in which the Law Court explained:

> A person not subject to formal arrest may be "in custody" if a reasonable person standing in the shoes of the defendant would have felt he or she was not at liberty to terminate the interrogation and leave or if there was a restraint on freedom of movement of the degree associated with a formal arrest. This test is an objective one, and we have stated in analyzing whether a defendant is in custody, a court may consider the following factors:
>
> 1) the locale where the defendant made the statements;
>
> 2) the party who initiated the contact;
>
> 3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

REC'D CUMB CLERKS O
DEC 11 '17 PM4:00

4) subjective views, beliefs, or intent that the police manifested to the defendant to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

7) whether the suspect was questioned in familiar surroundings;

8) the number of law enforcement officers present;

9) the degree of physical restraint placed upon the suspect; and

10) the duration and character of the interrogation.

*State v. Dion*, 2007 ME 87, ¶ 23, 928 A.2d 746, 750-51 (citing *State v Michaud*, 1998 Me 251 ¶ 4, 724 A.2d 1222, 1226.) *See also State v. Williams*, 2011 ME 36, 15 A.3d 753 (applying above-listed factors in totality in determining that defendant was not in custody at time of police interrogation).

Based on Trooper Flanagan's testimony and the evidence captured on the Trooper's dash-cam video recorder, the court finds the following:

Trooper Flanagan received a report that an individual driving a van with an "Advanced Auto Parts" logo had displayed a firearm in an alleged road rage incident on Interstate 295. The individual was identified as Sean O'Connell, an employee of Advanced Auto Parts. Trooper Flanagan drove to the company's Portland location where he saw a van meeting the description parked at the loading dock. On observing a man exit a door leading out to the loading dock, Trooper Flanagan asked, "Are you Sean?", followed by two further statements: "Can you just keep your hands out of your pockets for me?" and "Can you come on down here?" Defendant stepped down off the loading dock, and Trooper Flanagan then asked, "do you mind if I just pat you down real quick?" and "do you carry a firearm?" Defendant responded, "there's one in the vehicle," and asked, "is this about the guy who tried to follow me ….?" When Trooper Flanagan asked, "do you know why we're here?", Defendant launched into a narrative explanation of an "altercation with a guy on the highway," and provided further details when asked by Trooper Flanagan, "Alright, Sean, so what's your side of the story?" Then, following some questioning about a domestic

violence incident, Trooper Flanagan's cellphone rang. After taking the call (Trooper Flanagan testified that he spoke with State Trooper Burke, who reported that according to the complainant Defendant had pointed the firearm in an aggressive manner), Trooper Flanagan handcuffed Defendant and placed him in the Trooper's vehicle. On the drive to the jail, Defendant continued explaining what had happened on the highway while Trooper Flanagan remained silent. Upon arrival at the jail, Trooper Flanagan for the first time read Defendant his Miranda rights.

Applying the factors set forth by the Law Court for assessing whether Defendant was "in custody" at the time Trooper Flanagan questioned him, the court finds as follows:

Defendant made the statements at his place of business. Although Trooper Flanagan initiated the contact, the questioning was not coercive in character. Defendant was asked to "come on down" from the landing dock, and was told, "we're going to sit tight for a couple minutes" but was never told that he could not leave, nor did he express any interest in leaving. Rather, he conversed with Trooper Flanagan while leaning against the loading dock with his ankles crossed. His supervisor was present during much of the questioning. Two Portland police officers were present as well, but they did not participate in the questioning. Defense counsel suggested from Trooper Flanagan's testimony that the officers were there to "guard Defendant", but the officers were not captured by the camera lens, indicating that they were some distance away. Officer Flanagan, moreover, is heard telling them, "you guys can head out if you want, it's up to you" and "you guys don't have to stick around if you don't want." Although once in handcuffs Defendant was "in custody," no further interrogation took place.

Violation of *Miranda* occurs when an individual is subjected to *custodial interrogation* without having been apprised of his or her constitutional rights. Here, suppression is not warranted because both elements were not present at the same time: At the time Defendant was interrogated by Trooper Flanagan, he was not in custody, and once in custody, he was not interrogated. Accordingly, based on the evidence adduced at hearing, it is hereby ORDERED that Defendant's Motion to Suppress is DENIED.

DATED: _//Dec 17_

Jed J. French
Unified Criminal Court Judge

3