STATE OF MAINE                           SUPERIOR COURT
PISCATAQUIS, ss                          CRIMINAL ACTION
                                         DOCKET NO. CR-2020-00217


STATE OF MAINE,                )
                               )
                               )
v.                             )         ORDER ON DEFENDANT'S
                               )         MOTION TO SUPPRESS
                               )
NATHEN PETERS,                 )
                               )
Defendant.                     )


Before the Court is Defendant Nathen Peters' Motion to Suppress all statements given to

Piscataquis County Sheriff Officers on June 12, 2020 related to an investigation of operating under

the influence of alcohol. A hearing on the motion was held on February 22, 2021. The Court heard

testimony from Officer Robert Cook.

## I.    Factual background

On June 12, 2020, around 7:00 pm, Officer Robert Cook was working for the Piscataquis

County Sheriff's Department when he received a call from dispatch regarding an intoxicated man

walking down Lyford Road in Ornville Township, Maine. As Officer Cook approached the area,

he noticed a pick-up truck off the road and parked in a blueberry field. He drove another 100 yards

and came upon a man who was staggering as he walked and appeared intoxicated. Officer Cook

pulled up behind the man in his marked cruiser and without activating his blue lights, parked, and

got out. He was in full uniform, including a gun. Officer Cook made initial contact and asked what

was going on. Defendant Peters responded that he was walking home from a friend's house.

Officer Cook asked where, but Defendant did not answer. Officer Cook then asked for

identification and Defendant provided his name and date of birth. After Officer Cook confirmed

1

Defendant had a valid driver's license and was not subject to any bail conditions or warrants, Defendant asked Officer Cook if he would give him a ride home, just down the road in the direction he was walking. Officer Cook asked Defendant about the pick-up truck off the road and Defendant said he didn't know anything about it. Officer Cook told Defendant Peters he would drive him home if he wished to get in the cruiser. Defendant voluntarily got in the back seat, buckled himself in, and Officer Cook closed the door.

Inside the cruiser there was a cage type barrier between the front seat and back seat. The doors and windows were locked and could not be opened by Defendant. As he began to drive, Officer Cook quickly turned the cruiser around and drove back in the direction of the truck, opposite of Defendant's home. He told Defendant that he needed to check it out and Defendant asked "why?" When they got to the truck, Officer Cook got out of the cruiser and Defendant remained inside. Officer Cook began his investigation until Defendant banged on the window to be let out. Officer Cook opened the door and Defendant got out. Shortly thereafter, Officer Cook turned on his body camera and a lengthy interaction was recorded.

The two men can be heard talking back and forth. Officer Cook first questioned Defendant about who owns the truck and then about the need to bring Defendant to the Dover Police Department for an intoxilyzer test. Officer Cook can be heard telling Peters "you made a mistake today" to which Defendant responded "I ain't done nothing wrong." He then told Officer Cook he had bought the truck. Officer Cook then explained to Defendant that he got a call from dispatch about an intoxicated person in the area of the truck, that he found Peters not too far down the road, knows Defendant owns the truck, that he had the keys in his pocket, [1] and now he had to take

---

[1] Defendant apparently denied having the keys but agreed to allow Officer Cook to check his pocket, where he found keys. Officer Cook tried a key in the ignition and the truck started. Defendant has not moved to suppress the keys in this motion.

2

Defendant to the Dover Police station for a breath test. He further instructed "as long as you behave, I will drive you home after." Defendant repeatedly stated, "I just want a ride home" and that he didn't believe Officer Cook was not going to bring him to jail. Officer Cook assured him they were only going to the police department for a breath test and not to the jail. Officer Cook eventually said, "you're coming with me for suspicion of operating under the influence."

There was also discussion into whether Defendant knew of anyone who could come pick up the truck. At that point, Defendant denied owning the truck and Officer Cook reminded him that he already told him he owned the vehicle. Defendant responded with something to the effect of "just because I was driving, that means it is mine?" Officer Cook continued to question him about operating the vehicle. Officer Cook then tried to help Defendant find someone to pick up the truck, and even made phone calls for him. Toward the end of the conversation, Officer Cook told Defendant again that he was not under arrest, but said "you're right, you're not free to go." Defendant eventually agreed to go to the police station, at which point he was handcuffed and taken to the Dover Police Station. At the station he submitted to a breath test and was issued a summons. While he was completing paperwork, and Officer Cook was explaining the court process, Defendant made several incriminating statements, including something along the lines of "you caught me red handed." [2] Defendant Peters was never advised of his *Miranda* rights.

## II.    Analysis

Defendant argues all statements made to Officer Cook must be suppressed because he was subject to custodial interrogation and never advised of his *Miranda* rights. The State argues none

---

[2] At times the recording is unclear, and Officer Cook and Defendant occasionally talk over each other making it difficult to discern exactly what was said. The Court believes Defendant said something to the effect of "you caught me red handed." This is true for all the audio recordings and the quoted language in this order.

of the statements were the result of custodial interrogation and therefore all statements are admissible.

   a. Statements at the truck/roadside

The Fifth Amendment to the United State Constitution provides "No person... shall be compelled in any criminal case to be a witness against himself..." U.S. Const. amend. V. Statements made as a result of custodial interrogation are "admissible only if the person has been advised of the rights referred to in *Miranda v. Arizona*." *State v. Prescott*, 2012 ME 96, ¶ 9, 48 A.3d 218. "*Miranda* warnings are necessary only when a defendant is both 'in custody' and 'subject to interrogation.'" *State v. Ames*, 2017 ME 27, ¶ 12, 155 A.3d 881(citations omitted.) At the motion hearing, the burden is on the State to prove by a preponderance of the evidence that the defendant was not subject to a custodial interrogation. *Prescott*, 2012 ME 96, ¶ 10, 48 A.3d 218.

Regarding statements made by Defendant near the truck and on the roadside, there can little dispute that Defendant was subject to interrogation. The issue is whether Defendant was in custody when he was interrogated and if he was, when did custody begin? Defendant argues custody began the moment Officer Cook turned the cruiser around. The State argues Defendant was not in custody until he was handcuffed and brought to Dover.

To determine whether a person was in custody for Fifth Amendment purposes, the "ultimate inquiry is whether a reasonable person standing in the shoes of [defendant] would have felt he or she was not at liberty to terminate the interrogation and leave or if there was a restraint on freedom of movement of the degree associated with a formal arrest." *Prescott*, 2012 ME 96, ¶ 10, 48 A.3d 218. In its analysis, a court may consider the following factors:

   (1) the locale where the defendant made the statements;
   (2) the party who initiated the contact;
   (3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

4

(4) subjective views, beliefs, or intent that the police manifested to the defendant to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

(7) whether the suspect was questioned in familiar surroundings;

(8) the number of law enforcement officers present;

(9) the degree of physical restraint placed upon the suspect; and

(10) the duration and character of the interrogation.

*State v. Hopkins*, 2018 ME 100, ¶ 37, 189 A.3d 741. This test is an objective one and the "factors are considered in their totality, not in isolation." *Ames*, 2017 ME 27, ¶ 13, 155 A.3d 881. For purposes of *Miranda*, the Law Court has distinguished cases involving intoxicated persons found at the scene and temporarily detained pursuant to an investigatory stop from cases involving defendants who are found in a different location and then brought back to the scene for questioning and investigation by police.

> In one scenario, a law enforcement officer simply directs a person to remain at an accident scene while he or she investigates. In the [other] the law enforcement officer advises a person who is in another place, away from the scene "you need to come with me", takes the person involuntarily, however politely; puts the person in a police car; and transports the person to the scene for questioning.

*Prescott*, ¶ 14. [3]

The facts of this case fall somewhere in between those two scenarios but are distinguishable from a routine *Terry*-type stop. Here, Defendant was not found at the scene. Officer Cook did not ask, nor tell Defendant he was going to bring him back to the scene of the truck until he began to

---

[3] *Prescott* involved a defendant who was "subjected to custodial interrogation; not an investigatory detention" when police found her at her home and brought her back to the scene where she crashed her car for investigation and questioning. *Id.* ¶ 15. The same year, the Law Court distinguished that case from one involving a woman who was found at the scene of a single car crash, inside the vehicle, and demonstrating signs of intoxication. She was questioned and asked to perform sobriety tests at the scene. The Court found the defendant in that case was not in custody for purposes of *Miranda* when she was questioned because the "brief detention [was] consistent with characteristics of a *Terry* type stop. . ." *State v. Bragg*, 2012 ME 102, ¶ 11, 48 A.3d 769.

drive. Defendant asked "why?" and Officer Cook responded only because it was off the road.[4] At that point, Defendant was locked in the back seat of a moving cruiser and being taken to a location different than where Officer Cook indicated he would drive him. Despite the State's contention that Defendant willingly got into the cruiser, a reasonable person in Defendant's shoes would not have felt free or physically able to terminate the cruiser ride. This circumstance exceeded the scope of a *Terry*-type investigatory stop and constituted a 'restraint of freedom of movement of the degree associated with a formal arrest.' Further, a reasonable person having just been brought to a new location and then questioned as part of an investigation related to operating under the influence, would not have felt free to terminate the interrogation that occurred near the truck and roadside.[5]

Several factors outlined above further support finding Defendant was in custody. Officer Cook made initial contact with Defendant. Defendant believed he was going home; he did not voluntarily get into the cruiser knowing he would be brought to the truck and subjected to investigation. When he was informed, Defendant was already physically restrained and locked inside the cruiser. Upon arriving at the scene, Officer Cook began his investigation, the focus of which was clearly the truck and the defendant. Officer Cook had several reasons to suspect Defendant had been driving the truck under the influence, none of which were communicated to Defendant until several minutes after arriving at the scene. Defendant expressed many times he wanted to go home and was told that could only happen after the trip to the police station. At one point (about eleven minutes into the body camera video) Officer Cook said to Defendant "you're

---

[4] Based on Officer Cook's testimony, it does not appear that Defendant was subjected to interrogation while inside the cruiser.

[5] At the hearing, the State argued that Defendant is not entitled to taxi service simply because he got into the cruiser and that it is unreasonable to find Defendant was in custody after he asked for a ride. The Court agrees that it would be unreasonable to require police to forgo investigating a scene that should have been investigated to drive the defendant directly home, however, at that point Defendant should have been read Miranda.

6

not under arrest but you are not free to go." Although Officer Cook was non-confrontational, even friendly toward Defendant at times, it is clear Defendant was not free to go anywhere before he was taken to the station for testing.

Some factors also weigh in favor of finding Defendant was not in custody. Defendant asked for a ride and chose to get in the cruiser. The interrogation took place on the side of a rural road, not far from Defendant's home so he was likely familiar with his surroundings. Officer Cook was the only officer and after Defendant was let out of the cruiser, he was not physically restrained again until he agreed to go to the station. The interrogation was casual and non-threatening. Defendant never explicitly asked if he could or tried to leave. Considering the factors in their totality, the Court finds Defendant Peters was 'in custody' for purposes of the Fifth Amendment beginning when Officer Cook turned the cruiser around and remained in custody for the duration of the roadside interrogation and at the Dover Police station. Accordingly, all statements made by Defendant Peters from the time the cruiser changed directions until he arrived at the police station are suppressed.

### b. Statements at police station

The State argues that Defendant made spontaneous incriminating statements at the police station and that they are admissible despite the lack of Miranda warning. Defendant argues the statements were made in response to interrogation. "The Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *State v. Dominique*, 2008 ME 180 ¶ 15, 960 A.2d 1160 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). "A custodial interrogation consists of words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect. *State v. Rossignol*, 627 A.2d 524, 526 (Me. 1993) (internal quotations

omitted.) However, "the *Miranda* rule does not apply to spontaneous statements that are not a response to interrogation." *State v. Lear*, 1998 ME 273, ¶ 9, 722 A.2d 1266. There is no dispute Defendant was in custody when he was at the station. The issue regarding these incriminating statements is whether they were made in response to interrogation.

After the intoxilyzer test was administered, Officer Cook attempted to get Defendant Peters to sign the summons, explained the court process, and Defendant's right to challenge the charge. Defendant said something to the effect of "I sign that. Court date comes, I go to court, I agree that I did it." Officer Cook responded to the effect of "That's your decision" and Defendant responded, "Oh my goodness, alright, like, you caught me red handed." Along with other statements such as "I'm a drunk driver now." This portion of the interaction at the police station was clearly administrative in nature and nothing Officer Cook said or did immediately prior to that statement would have led a reasonable officer to believe it would elicit an incriminating response. *See State v. Dominique*, 2008 ME 180 ¶ 15, 960 A.2d 1160. The Court finds these statements were not made in response to interrogation and are therefore admissible despite the lack of *Miranda* warning.

The entry is: Motion to Suppress is granted as to the statements made by Defendant at the truck and on the side of the road. The Motion is denied as to statements made at the police station during the administrative portion of the interaction.

9/23/21
Dated

William Anderson, Justice
Maine Superior Court

8